**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JAMES R. ALLEN and DIANE Z. ALLEN,**
individually and on behalf of all others
similarly situated, et al.

       **Plaintiffs,**

v.                                        **Lead Case No.: 3:13cv143-MCR/CJK
Case No. 3:13cv582-MCR/CJK**

**UNITED SERVICES AUTOMOBILE
ASSOCIATION, et al.,**

       **Defendants,**
_____/

## ORDER

Plaintiffs James R. Allen and Diane Z. Allen ("the Allens") have filed a putative class action against their insurer, Defendant United Services Automobile Association ("USAA") claiming that USAA increased their homeowner's law and ordinance insurance coverage without a written selection, in violation of Fla. Stat. § 627.7011(2), and they seek monetary damages for breach of contract as well as declaratory and injunctive relief.[1] USAA has filed a Motion to Dismiss, arguing that the statute does not provide a private cause of action and the Allens have otherwise failed to state a cause of action.[2] The Court heard

---

[1] Invoking this Court's diversity jurisdiction, the First Amended Complaint alleges that Plaintiffs are residents of Florida, USAA is a citizen of Texas, and that damages in excess of $5,000,000 are at issue. *See* 28 U.S.C. § 1332(d).

[2] Also pending before the Court is USAA's request to bifurcate discovery (doc. 27) and the Plaintiffs' Motion for Class Certification (doc. 33). Additionally, by Order dated December 10, 2013, this case was consolidated with *Schall v. USAA Cas. Ins. Co.*, No. 3:13cv582-MCR/CJK (N.D. Fla.), in which the same claims have been raised. All proceedings related to the *Schall* case have been stayed pending a ruling on USAA's pending motion to dismiss in this case.

Lead Case No. 3:13cv143-MCR-CJK &
Case No. 3:13cv582-MCR-CJK

oral argument on the motion, and now, having fully and carefully considered the matter, rules as follows.

**Background**

Since 1993, Florida law has required insurers who issue homeowner's insurance to offer a policy providing replacement costs including law and ordinance coverage, which covers the additional costs necessarily incurred in repairing a damaged building to bring it into compliance with new laws and ordinances that were not in effect when it was originally built.[3] *See* Fla. Stat. § 627.7011. This law requires insurers to offer a choice between (a) a policy providing for replacement costs, rather than actual cash value, but *not including* the costs necessary to comply with new laws and ordinances and (b) a policy providing for replacement costs and also *including* the costs necessary to comply with new laws and ordinances. Fla. Stat. § 627.7011(1)(a),(b). Additionally, the law provides that an insurer may also offer a guaranteed replacement cost policy. *See id.* Under the 2003 version of the statute, the insurer could offer law and ordinance coverage limited to 25 percent of the dwelling limit, and since October 1, 2005, the statute has provided that the law and ordinance coverage "may be limited to either 25 percent or 50 percent of the dwelling limit, as selected by the policyholder," and the insurer must offer both limits. Fla. Stat. § 627.7011(1)(b). Additionally, "[u]nless the insurer obtains the policyholder's written refusal of the policies or endorsements specified in subsection (1), any policy covering the dwelling is deemed to include the law and ordinance coverage limited to 25 percent of the dwelling limit."[4] Fla. Stat. § 627.7011(2).

The Allens own and reside on property in Pensacola, Florida, for which they have purchased homeowner's insurance from USAA. They have renewed the policy each year

---

[3] This statute was designed to counter the problems that arose from policy exclusions of the additional costs associated with meeting current construction standards when rebuilding a damaged home, which often left insureds with insufficient coverage.

[4] It is alleged in the First Amended Complaint that legislative history referring to the amendment was intended to "[C]larif[y] that if a property insurer does not obtain a written rejection from the policyholder for law and ordinance coverage, the policy is deemed to include such coverage limited to 25 percent of the dwelling (and not the alternative 50 percent limit that must also be offered)." (Doc. 7, at ¶ 14.)

Lead Case No. 3:13cv143-MCR-CJK &
Case No. 3:13cv582-MCR-CJK

since 2002. From March 3, 2002, through March 3, 2006, their policy included replacement cost coverage plus additional law and ordinance coverage limited to 25 percent of the Coverage A (dwelling) limit of liability. Since 2006, each renewed policy has automatically included replacement cost coverage plus additional law and ordinance coverage limited to 50 percent of the Coverage A (dwelling) limit of liability, which the Allens did not expressly request. USAA charged an increased premium for the 50 percent law and ordinance coverage in the renewal policies, but each renewal policy included a form on which the Allens could make an express, written selection of coverage limited to 25 percent, or 50 percent, or could reject law and ordinance coverage altogether. The form expressly stated that it was not necessary to return the form if the policyholder did not want to make any changes to the policy.[5] The Allens never returned the form and instead paid the increased premiums year after year.

According to the Allens, since at least 2008, USAA has been violating state law by automatically renewing their law and ordinance coverage at 50 percent of their dwelling limit without their written request or authorization, citing Fla. Stat. § 627.7011(1) and (2). The Allens request declaratory and injunctive relief to end this practice and also allege that USAA's violation of the statute amounts to a breach of contract, arguing the statute is incorporated into their contracts of insurance by operation of law and that damages resulted from their having to pay increased premiums.[6] USAA moves to dismiss the First Amended Complaint for failure to state a claim.

**Discussion**

A federal court sitting in diversity generally applies federal procedural law and the

---

[5] The Allens' policies, which include this form, are attached to the Amended Complaint. The form included the following statements: "If you don't want to make changes, there is no need to return this notice;" "rejection must be in writing for changes to apply to this coverage;" and "Florida law requires that we obtain your signature if you want to change your Building Ordinance or Law coverage limit, or if you want to reject the additional coverage entirely."

[6] The Allens further allege, on information and belief, that "when policyholders inquired about the increase in the law and ordinance coverage, they were told the increase was the result of a new Florida law mandating that insurers increase law and ordinance coverage to 50 percent of the dwelling coverage." (Doc. 4, at 4 ¶ 17). No claim of fraud is asserted, however.

substantive law of the state in which it sits. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (applying *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Accordingly, the Court applies federal procedural law and Florida substantive law to the issues in this case.

Courts evaluate the sufficiency of a complaint under Federal Rule of Civil Procedure 8(a), which requires in pertinent part "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion pursuant to Rule 12(b)(6) seeks dismissal of the complaint for "failure to state a claim upon which relief can be granted." In considering this motion, the Court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). The allegations of the complaint must "state a claim to relief that is plausible on its face" when viewed in this manner. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the allegations in the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions must be supported by factual allegations, and the tenet that allegations of the complaint must be accepted as true does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678; *Chandler v. Secretary of Fla. Dept. of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). As a rule, courts do "not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). An exception to this rule exists "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.*

The Allens' claims are based on the premise that the statute requires a separate written rejection of the default level of law and ordinance coverage before the insurer can provide coverage greater than the default level; they also assert that this statutory right, as they have defined it, is incorporated into their policies as a contract term. USAA argues

that the Allens have failed to state a breach of contract claim because they do not allege a breach of any of the policy's express terms and, even if the statute is incorporated into the policy, the remedy for the type of breach alleged (that is, providing too much insurance) is to enforce the policy as written, not re-write the contract, citing Fla. Stat. § 627.418(1). USAA further asserts that the Court should not create a remedy for disputes involving the rates charged for insurance coverage because such matters are committed by state law to an administrative or regulatory forum.

To state a plausible breach of contract claim or claim for declaratory relief, the Allens must show that Section 627.7011 is incorporated into their policies as a material term and that it has been violated. Although the Court accepts the factual assertions as true at this stage, the predicate questions of law–such as whether the statute is incorporated into the policies or whether the facts alleged amount to a violation of the statute–cannot be accepted as true and must be determined by the Court as a matter of law. *See Iqbal*, 556 U.S. at 678 (stating, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). These questions require a careful examination of the statute. As always, the Court begins with the statute's plain language. *See Atwater v. Kortum*, 95 So. 3d 85, 90 (Fla. 2012) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.") (internal marks omitted). The current statute on law and ordinance coverage provides, in relevant part, as follows:

> (1)  Prior to issuing a homeowner's insurance policy, the insurer must offer each of the following:
>
> (a)  A policy or endorsement providing that any loss that is repaired or replaced will be adjusted on the basis of replacement costs to the dwelling not exceeding policy limits, rather than actual cash value, but not including costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of

any property, including the costs of removing debris.

(b)   A policy or endorsement providing that, subject to other policy provisions, any loss that is repaired or replaced at any location will be adjusted on the basis of replacement costs to the dwelling not exceeding policy limits, rather than actual cash value, and also including costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris. However, additional costs necessary to meet applicable laws and ordinances may be limited to 25 percent or 50 percent of the dwelling limit, as selected by the policyholder, and such coverage applies only to repairs of the damaged portion of the structure unless the total damage to the structure exceeds 50 percent of the replacement cost of the structure.

An insurer is not required to make the offers required by this subsection with respect to the issuance or renewal of a homeowner's policy that contains the provisions specified in paragraph (b) for law and ordinance coverage limited to 25 percent of the dwelling limit, except that the insurer must offer the law and ordinance coverage limited to 50 percent of the dwelling limit. This subsection does not prohibit the offer of a guaranteed replacement cost policy.

(2)   Unless the insurer obtains the policyholder's written refusal of the policies or endorsements specified in subsection (1), any policy covering the dwelling is deemed to include the law and ordinance coverage limited to 25 percent of the dwelling limit. The rejection or selection of alternative coverage shall be made on a form approved by the office. The form must fully advise the applicant of the nature of the coverage being rejected. If this form is signed by a named insured, it is conclusively presumed that there was an informed, knowing rejection of the coverage or election of the alternative coverage on behalf of all insureds. . . .

Fla. Stat. § 627.7011 (2011).[7]

---

[7]   In 2005, lawmakers amended subsection (1)(b) to allow the insurer to offer alternative levels of coverage – the additional costs "may be limited to either 25 percent or 50 percent of the dwelling limit, as selected by the policyholder;" but the subsection (2) provided only that in the absence of a written rejection, coverage would be deemed as that "specified in paragraph (1)(b)," without identifying which amount was the default level.  *See* Fla. Stat. § 627.7011 (2005).  In other words, the statute at that time did not specify which level of permissible coverage (25 percent or 50 percent) would be deemed to apply in the absence of a written rejection or selection.  A 2006 amendment clarified that the default coverage would be limited to 25 percent

"Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights."[8] *Foundation Health v. Westside EKG Assocs.*, 944 So. 2d 188, 194-95 (Fla. 2006). In *Foundation Health*, the Florida Supreme Court "accepted the principle that when parties enter into a contract regarding a matter which is the subject of statutory regulation, those regulatory provisions become a part of the contract." *Health Options, Inc. v. Palmetto Pathology Servs., P.A.*, 983 So. 2d 608, 614 (Fla. 3d DCA 2008); *see Foundation Health*, 944 So. 2d at 195 (finding the HMO Act's prompt pay provisions may be incorporated into member contracts for purposes of asserting a third-party breach of contract claim). Specifically, the Florida Supreme Court noted that incorporation of the HMO Prompt Payment provision was proper where there was "significant statutory regulation" surrounding the contract; the statute played "an integral role in providing substance or structure" to the parties' rights and responsibilities; and the statute did not foreclose a common law contract action based on breach of the statutory requirements. *Foundation Health*, 944 So. 2d at 195-96 (finding that the statutory language at issue provided additional payment details considered "implicit" in the contracts); *see also State Farm Fire and Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993) (finding that an attorney's fee statute, which applied in virtually all insurance contract suits, was "an implicit part of every insurance policy issued in Florida"); *Heatlh Options*, 983 So. 2d at 614 (finding that a statute governing when HMO physician services are authorized may be incorporated into member contracts);[9] *Lutz v. Protective*

---

of the dwelling limit. Fla. Sat. § 627.7011 (2006). Additionally, some minor grammatical changes to the statute have been made over the years.

[8] Although Fla. Stat. § 624.155 does not provide a civil remedy for a violation of Section 627.7011, the remedies specified there do "not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state." Fla. Stat. § 624.155(8).

[9] When applying this principle in *Health Options*, the Third District Court of Appeal noted that the contracts there in dispute were "expressly subject to 'all applicable state and federal laws and regulations,'" with no exception directed at the statutes at issue. *Id*. at 614 n.6.

*Life Ins. Co.*, 951 So. 2d 884, 887-88 (Fla. 4th DCA 2007) (noting that a statutory requirement for a group insurance policy could be incorporated into the policy and support a breach of contract claim if properly pleaded, but rejecting the claim on grounds that the contractual breaches alleged in that instance were not sufficiently tied "to any specific statutory language or requirements"). Thus, the "'general doctrine'" provides that, where a contract involves "'a subject which is surrounded by statutory limitations and requirements'" that play an "integral role" in defining the parties' rights and responsibilities, those statutory limitations and requirements may be implicit in the contract, absent a reason to conclude otherwise. *See Foundation Health*, 944 So. 2d at 195 (quoting *Citizens Ins. Co. v. Barnes*, 124 So. 722, 723 (Fla. 1929)). On the other hand, where the statute's text and structure, which "display the legislature's intent," do not demonstrate that the statute provides "essential substance to a contract" that is applicable in "virtually all suits," *Lemy v. Direct Gen. Fin. Co.*, 884 F. Supp.2d 1236, 1241 (M.D. Fla. 2012), *aff'd*, 2014 WL 903371, at *2 (11th Cir. Mar. 10, 2014), and where the statute establishes no penalties for the statutory violation, *see QBE Ins. Corp. v. Chalifonte Condo. Apt. Assoc.*, 94 So. 3d 541, 553 (Fla. 2012) (finding no private right of action for a technical type-size violation where no penalty was provided in the statute), courts should not infer either a statutory or a common law right of action. *See Lemy,* 884 F. Supp.2d at 1241; *see also Lemy*, 2014 WL 903371, at *2 (stating "courts cannot provide a remedy when the Legislature has failed to do so" (internal marks omitted)). The Middle District of Florida aptly noted in *Lemy* that, in cases where the Florida Supreme Court has determined that a particular statute was incorporated as a contract term, such as in *Foundation Health* and *Palma*, the statute was a type that materially aided an insured in obtaining a claim payment from an insurer. *See Lemy,* 884 F. Supp.2d at 1242 (rejecting an argument for incorporation where the statute did not affect claim payment; the policy itself displayed the coverage purchased; and there was no allegation that the plaintiffs had received less that what the policy promised).

The statutory text and structure of Section 627.7011(1),(2) requires law and ordinance coverage to be offered at specified limits and provides for default coverage by

"deeming" a policy to include law and ordinance coverage limited to 25 percent of the dwelling limit unless the insurer has obtained a "written refusal of the policies or endorsements specified in subsection (1)." Fla. Stat. § 627.7011(2).  There is no claim for coverage or any coverage dispute at issue in this case.  Instead, the Allens maintain that this statutory language is incorporated into their contract and defines their substantive rights to include–according to the Allens' reading of the statute–a right to receive and pay for only the default level of coverage, regardless of the face of the policy, unless the insurer has obtained their express written rejection of the default level or written selection of the higher coverage level.  For the following reasons, the Court finds no such right in the statute, and therefore no basis for incorporating the statute into the Allens' insurance policies.

First, the default coverage provided by the statute simply does not apply in this case.  Because the Allens' policies *included* law and ordinance coverage, the event that otherwise would trigger the default coverage described in subsection (2)–that is, purchasing a homeowner's policy with no law and ordinance coverage–did not occur. Although there is an argument to be made that this statute reflects the necessary legislative intent to provide a substantive level of default coverage for homeowners who do not have law and ordinance coverage and have not rejected such coverage in writing, *see, e.g., Adams v. Aetna Cas. & Sur. Co.*, 574 So. 2d 1142, 1146 (Fla. 1st DCA 1991)[10] (discussing uninsured motorist coverage and stating that the requirement of a written refusal of coverage is "not a mere technicality, but a substantial statutory requirement

---

[10] In the absence of controlling Florida Supreme Court law, this Court is bound to apply the decisions of Florida's First District Courts of Appeal when deciding issues of substantive state law in diversity.  *See Fisk Elec. Co. v. SECS, Inc.*, No. 07-61184-CIV, 2008 WL 1776665, at *4 n.3 (S.D. Fla. 2008) (stating the federal court is bound by the Florida Supreme Court decisions and, if none, those of the state's intermediate court where suit could have been brought) (citing *Peoples Bank of Polk County v. Roberts*, 779 F.2d 1544, 1545-46 (11th Cir.1986); *Farmer v. Travelers Indemnity, Co.*, 539 F.2d 562, 563 (5th Cir.1976)); *see also CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, 2011 WL 4454937, at *8 (S.D. Fla. 2011) ("Federal courts sitting in diversity in Florida must follow the decisions of the state courts and apply Florida law as if they are courts of the State of Florida.").

designed to protect all insureds under the policy"), that circumstance is not present here where the Allens' policies provided coverage over and above the default level. Because the default coverage statute does not define the coverage level for the Allens' policies, the statute cannot be said to play an "integral role" in defining the parties' rights and responsibilities as is necessary for incorporation as a policy term. *See Foundation Health*, 944 So. 2d at 195. In sum, where, as here, the policy on its face expressly provides coverage in excess of the default level, there is simply no basis for incorporating the statutory default level into the policy.

Second, the written refusal requirement in subsection (2) does not relate to the levels of law and ordinance coverage but instead applies only when the insured has refused the coverage altogether–that is, the statute requires the insurer to obtain "written refusal of the *policies or endorsements* specified in subsection (1)." Fla. Stat. § 627.7011(2) (emphasis added). Subsection (1) describes two describes two types of coverage–(a) a replacement cost policy *without* law and ordinance coverage and (b) a replacement cost policy *including* law and ordinance coverage. *Id.* § 627.7011(1). Thus, a separate writing is required either to select a policy without law and ordinance coverage or to refuse a policy with law and ordinance coverage. The statute's language unquestionably refers to the type or nature of coverage when discussing the written refusal requirement, not the particular amount or limits of coverage.[11] The statute speaks in terms of "*policies and endorsements* specified in subsection (1)" and references that "the rejection or selection of alternative *coverage*" shall be on an approved form that advises the policyholder of the "nature of the *coverage* being rejected." *Id.* (emphasis added). It stands to reason that a rejection or selection between the subsection (1) types of alternative coverage must be in writing to ensure a knowing rejection of law and ordinance coverage, which otherwise would not be evident from a policy that does not provide this

---

[11] Subsection (2) refers to the 25 percent coverage level only to clarify that, in the event of a default in the policy, this is the level of coverage that will be deemed to apply.

Lead Case No. 3:13cv143-MCR-CJK &
Case No. 3:13cv582-MCR-CJK

coverage. Because subsection (2) requires insurers to obtain a policyholder's "written refusal of the policies" and not written refusal of particular limits of coverage, the right that the Allens allege has been violated does not exist in the statute.

Third, subsection (1)'s statement that a law and ordinance policy "may be limited to 25 percent or 50 percent of the dwelling limit, as selected by the policyholder," also does not expressly require a separate *written* selection to purchase the higher limit. Indeed, nothing in the statute requires a separate written selection of law and ordinance coverage, or a separate written selection of the coverage at the 50 percent limit.[12] Such a requirement would be nonsensical because if law and ordinance coverage is *selected*, the face of the policy will necessarily define the limit of coverage that will govern the policy, unless the policy provides less than what the statute requires, which is not at issue here. There is no basis in the statute for imposing an additional requirement that, in the absence of a separate "written selection" of a *particular limit* of law and ordinance coverage, the plain language of the policy must be disregarded if it exceeds the statutory default level, as the Allens seem to suggest is the case. The express legislative policy choice in the statute reflects the Florida Legislature's intent to protect the public from uncovered losses by providing notice of this type of coverage; by offering the coverage at two different amounts from which the policyholder can choose; and by setting coverage at the 25 percent limit where the policy does not include such coverage expressly and the insurer has not obtained the policyholder's written knowing rejection of the coverage. Subsection (4) states an express intent "to encourage policyholders to purchase sufficient coverage to protect them in case events excluded from the standard homeowners policy, such as law and ordinance enforcement," combine with covered events to produce a loss, and "to encourage policyholders to discuss these issues with their insurance agent." Fla. Stat. § 627.7011(4). Contrary to the Allen's argument, nothing in the statute reflects a legislative

---

[12] Subsection (2) speaks of a written selection of "alternative coverage," and plainly, law and ordinance coverage limited to 50 percent is still law and ordinance coverage; not "alternative coverage."

policy choice to protect, or deter, a policyholder from purchasing more coverage than needed. The insurer's provision of a policy with greater coverage, which the insured may reject, actually works to benefit the policyholder *and the public* in the event the reconstruction costs of complying with ordinances after a covered event are high.

Furthermore, the Allens cannot plausibly claim that they did not "select" this coverage where the facts alleged show that they accepted the renewal policies, which clearly provided and charged for this increased coverage, and they paid for coverage at the 50 percent level year after year. "If the insured failed to read the policy his dereliction cannot be charged to the insurance company. In the absence of fraud[,] no fraud is asserted herein[,] the provision of the policy here under consideration is binding upon the policyholder." *Globe & Rutgers Fire Ins. Co. v. Segler*, 44 So. 2d 658, 660 (Fla. 1950) (also stating "[t]he insured is bound by the terms of the policy which he accepts"). It is axiomatic that a clear and unambiguous insurance policy "must be construed in accordance with the plain language of the policy as bargained for by the parties." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 33 (Fla. 2000) (internal marks omitted); *see also State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569-70 (Fla. 2011) (stating a policy's plain language must be given effect as written). For all of these reasons, neither the statutory default coverage limit nor the requirement of a written refusal of law and ordinance coverage provides the right the Allens claim, and the statute is not so integral to defining their rights under the contracts at issue that it is incorporated by law as a material term. Thus, in light of the plain terms of the statute and the insurance policies, the Allens have not alleged a plausible claim that USAA violated either. The Allens likewise also have no plausible basis for pursuing the declaratory and injunctive relief they seek. Even accepting their factual allegations as true, they cannot show a plausible violation of the statute or that any of their contractual rights are in doubt or uncertain.[13]

Accordingly, Defendant USAA's Motion to Dismiss the First Amended Complaint

---

[13] In light of these conclusions, it is not necessary to address the parties' remaining arguments.

(doc. 20) is **GRANTED**.  This Order also applies to the complaint in the consolidated *Schall* file, No. 3:13 cv582-MCR-CJK, which involves the same issues and thus likewise suffers from the same defect of failure to state a claim and is **DISMISSED** for the same reasons. Therefore, the Clerk is directed to close both files.  Costs to be taxed against the Plaintiffs in each case.  All other pending motions are **DENIED as MOOT**.

    **DONE and ORDERED** this 30th day of March, 2014.


                *M. Casey Rodgers*
            **M. CASEY RODGERS**
            **CHIEF UNITED STATES DISTRICT JUDGE**