# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N W
Atlanta, Georgia 30303

Douglas J  Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 25, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  14-13478-FF
Case Style:  James Allen, et al v. United Services Auto. Assoc.
District Court Docket No:  3:13-cv-00143-MCR-CJK

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13478
Argument Calendar

_____

D.C. Docket No. 3:13-cv-00143-MCR-CJK

JAMES R. ALLEN,
DIANE Z. ALLEN,
MATTHEW J. SCHALL,
JUDITH A. SCHALL,
Husband and Wife Individually and as Representatives
of Others Similarly Situated,

Plaintiffs – Appellants,

versus

USAA CASUALTY INSURANCE COMPANY,
A Texas Corporation,

Defendant,

UNITED SERVICES AUTOMOBILE ASSOCIATION,
A Texas Reciprocal Inter-Insurance Exchange
and Unincorporated Association,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 25, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and BLACK, Circuit Judges.

BLACK, Circuit Judge:

After James R. Allen and Diane Z. Allen (collectively, the Allens) purchased building ordinance and law (BOL) insurance from United Services Automobile Association (USAA) covering 50% of their home's value, they suffered no losses triggering payment.  Now the Allens seek to recover a portion of their premium payments because they assert they would have elected to pay for BOL insurance covering only 25% of their home's value.  Nonetheless, their position is that had they actually suffered a loss, they would have been entitled to 50% of their home's value, not 25%.  The Allens appeal the district court's dismissal of their complaint, arguing Florida Statutes § 627.7011(2) entitles them to a refund of the difference in premiums USAA would have charged for 25% rather than 50% BOL coverage.

We agree with the district court that the plain language of § 627.7011(2) does not require an insurer to obtain a policyholder's written consent on a form approved by the Florida Office of Insurance Regulation (Regulation Office) before issuing BOL coverage greater than 25%.  Additionally, Florida Statutes

§ 627.418(1) bars the Allens' suit because the only remedy available for providing extra insurance coverage is to enforce the contract as written. The Allens freely contracted to buy 50% coverage, that is exactly what they received, and no legal basis exists for reducing their premium payments. We therefore affirm.[1]

## I. BACKGROUND

The Allens are a married couple who have resided in Pensacola, Florida since 2000. Since 2002, the Allens have obtained homeowner's insurance coverage from USAA. These policies have included BOL coverage.

Building ordinances can significantly raise the cost of repairing or replacing a damaged structure. These costs are not covered by standard property insurance, which typically covers only the cost of restoring the building to its original condition. BOL coverage fills this gap by paying for the cost of complying with building codes or other legal requirements when repairing or replacing a structure after a covered loss. For example, assume a house is built with single-pane windows. Thereafter, the local government enacts a rule requiring double-pane windows, and a window subsequently breaks. The primary insurance coverage pays the cost to replace a single-pane window, and BOL coverage pays the additional cost required to upgrade to the double-pane window. BOL coverage is stated as a percentage of the primary dwelling coverage. Thus, an insurance policy

---

[1] We deny the Allens' motion to certify state law questions to the Florida Supreme Court.

3

for a $100,000 home with 25% BOL coverage provides $25,000 to pay for upgrades required by law.

From March 3, 2002 to March 3, 2006, the Allens' policies included 25% BOL coverage. Since March 3, 2006, the Allens' policies have included 50% BOL coverage. The policies effective from 2006 to 2013 contain a page titled "Building Ordinance or Law Coverage – Florida," which specifies each policy includes 50% BOL coverage.

Neither this nor any other page is an approved Regulation Office form pursuant to Florida Statutes § 627.7011(2). Section 627.7011(2) mandates that "[t]he rejection or selection of alternative coverage shall be made on a form approved by the [Regulation] [O]ffice." According to Florida Administrative Code Rule 69O-167.011, insurers can comply with § 627.7011(2)'s form requirement in two ways. First, the insurer may obtain the policyholder's written consent on Form OIR-1148, which is available on request from the Regulation Office. Fla. Admin. Code r. 69O-167.011(3). Second, the insurer may obtain the policyholder's written consent on the insurer's own form that has been submitted to and approved by the Regulation Office. *Id.* The Allens never consented to 50% BOL coverage on Form OIR-1148. Nor did they consent to 50% BOL coverage on USAA's own form that could have been submitted to and approved by the Regulation Office. Thus, it is undisputed the Allens never gave written consent to 50% BOL coverage

4

on an approved Regulation Office form.  Instead, they contracted to purchase 50%
BOL coverage on USAA's non-approved form.

The Allens filed a proposed class action complaint in the Northern District
of Florida alleging USAA violated § 627.7011(2) by providing 50% BOL coverage
without the Allens' written consent on a form approved by the Regulation Office.
The time period encompassed by the complaint includes USAA policies issued
since April 1, 2008.  The Allens sought a declaratory judgment, permanent
injunction, and damages for breach of contract measured by the difference in the
premiums that USAA would have charged for 25% rather than 50% BOL
coverage.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), USAA moved to
dismiss the complaint for failure to state a claim.  The district court stayed
discovery and class certification pending adjudication of the motion to dismiss.[2]
After a hearing, the district court entered an order dismissing the complaint.  The
district court held § 627.7011(2) does not require an insurance provider to obtain

---

[2]  While the motion to dismiss was pending, Matthew J. Schall and Judith A. Schall
(collectively, the Schalls), a married couple residing in Pensacola, Florida, filed a separate suit
raising nearly identical claims against USAA Casualty Insurance Company, a wholly owned
subsidiary of United Services Automobile Association.  The district court consolidated the *Allen*
and *Schall* cases and stayed the *Schall* case pending the resolution of the motion to dismiss.  In
light of this procedural history, our analysis applies uniformly to the Allens and Schalls, on the
one hand, and USAA and USAA Casualty Insurance Company, on the other.  Where this opinion
refers to the Allens, the reference includes the Allens and the Schalls.  Where this opinion refers
to USAA, the reference includes United Services Automobile Association and USAA Casualty
Insurance Company.

the policyholder's written selection on an approved Regulation Office form before

issuing a policy with more than 25% BOL coverage.  The Allens timely filed a

notice of appeal.

## II. STANDARD OF REVIEW

We review de novo a Rule 12(b)(6) dismissal for failure to state a claim and

construe the factual allegations in the complaint in the light most favorable to the

plaintiff.  *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1206

(11th Cir. 2012).  This Court ordinarily does not consider anything beyond the face

of the complaint and documents attached thereto when analyzing a motion to

dismiss.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69

(11th Cir. 1997).  However, where a document—such as an insurance policy—is

central to the plaintiff's claim, its contents are not in dispute, and the defendant

attaches the document to its motion to dismiss, this Court may consider that

document as well.  *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284

(11th Cir. 2007).

Under Rule 12(b)(6), dismissal is proper when, "on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of

action."  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171,

1174 (11th Cir. 1993).  This Court may affirm for any reason supported by the

record, even if not relied upon by the district court.  *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993).

## III. DISCUSSION

The Allens signed USAA's contract for 50% BOL coverage.  They did not, however, give written consent to this coverage on an approved Regulation Office form.  The question before us is whether USAA violated Florida Statutes § 627.7011(2) by providing 50% BOL coverage without the Allens' written consent on a form approved by the Regulation Office.  To answer this question, we begin by interpreting § 627.7011(2).  We then examine whether, even assuming USAA violated § 627.7011(2), the Allens' complaint should be dismissed pursuant to Florida Statutes § 627.418(1).

*A. Florida Statutes § 627.7011(2)*

Both parties agree an insurer must obtain a policyholder's written consent on a form approved by the Regulation Office before issuing less than 25% BOL coverage.  The Allens argue the district court erred in concluding Florida Statutes § 627.7011(2) does not require a policyholder's written consent on an approved Regulation Office form before issuing BOL coverage greater than 25%.  According to the Allens, when the Florida Legislature enacted § 627.7011(2), it sought to ensure homeowners were sufficiently, but not excessively, insured.

To accomplish this objective, the Allens assert, § 627.7011(2) sets 25% as the default BOL coverage, then requires the policyholder's written consent on an approved form to depart upward or downward from this 25% level.  The Legislature crafted this requirement to protect owners of relatively new homes from paying for unnecessary insurance.  If a home were built within the past two years, for example, BOL coverage would be virtually useless because the home is likely in compliance with the most recent building codes.

In response, USAA argues § 627.7011(2) does not require an insurer to obtain a policyholder's written consent on a form approved by the Regulation Office before issuing BOL coverage greater than 25%.  According to USAA, § 627.7011(2) is a gap-filling rule that applies only when the insured has refused BOL coverage altogether and imposes no restrictions on how a homeowner acquires extra BOL insurance.

   *1.  Statutory text*

We analyze Florida Statutes § 627.7011(2) in accordance with Florida law because a federal district court sitting in diversity applies the substantive law of the state in which it sits.  *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002).  When construing a statute, we strive to effectuate the Legislature's intent.  *Borden v. East–European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006).  To discover this intent, we first examine the statute's plain language.  *See Atwater v.*

8

*Kortum*, 95 So. 3d 85, 90 (Fla. 2012).  "[W]ords or phrases in a statute must be

construed in accordance with their common and ordinary meaning."  *Donato v.*

*Am. Tel. & Tel. Co.*, 767 So. 2d 1146, 1154 (Fla. 2000).

> Subsection (2) of § 627.7011 states, in relevant part:
>
> Unless the insurer obtains the policyholder's written refusal of the
> policies or endorsements specified in subsection (1), any policy
> covering the dwelling is deemed to include the law and ordinance
> coverage limited to 25 percent of the dwelling limit. The rejection or
> selection of alternative coverage shall be made on a form approved by
> the [Regulation] [O]ffice. . . .

To ascertain the meaning of subsection (2), one must understand its relationship to

subsection (1).  Rather than lay out subsection (1) in full, we describe its

provisions in abridged form due to its protracted length.[3]

Pursuant to subsection (1), the insurer must offer each homeowner two

"policies or endorsements" and the following three coverage options.  Fla. Stat.

§ 627.7011(1).  First, under subsection (1)(a), the insurer must offer a "policy or

endorsement" to adjust claims on the basis of "replacement cost[]," which does not

deduct depreciation from the value of the claim, as opposed to "actual cash value,"

which does deduct depreciation value from the claim.[4]  *Id.* § 627.7011(1)(a).  This

option excludes BOL coverage.  *Id.*  Second, under subsection (1)(b), the insurer

---

[3]  The text of § 627.7011 relevant to this appeal is attached as an appendix.

[4]  "In other words, replacement cost policies provide greater coverage than actual cash value policies because depreciation is not excluded from replacement cost coverage, whereas it generally is excluded from actual cash value."  *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013).

must offer a "policy or endorsement" to adjust claims on the basis of replacement cost including 25% BOL coverage.  *Id.* § 627.7011(1)(b).  Third, also under subsection (1)(b), the same "policy or endorsement" referring to 25% BOL coverage must additionally offer to adjust claims on the basis of replacement cost including 50% BOL coverage, as selected by the policyholder.  *Id.*

If the policy already provides for replacement cost insurance including 25% BOL coverage, the insurer need not separately offer the first two coverage options listed above.  *Id.*  However, the insurer must still offer the third coverage option for replacement cost insurance including 50% BOL coverage.  *Id.*

Thus, subsection (1) requires the insurer to offer two "policies or endorsements."  The first "policy or endorsement" offers replacement cost coverage.  The second "policy or endorsement" offers both 25% and 50% BOL coverage.  There are accordingly two "policies or endorsements" and three coverage options.

Turning to subsection (2), a policy is deemed to include 25% BOL coverage "[u]nless the insurer obtains the policyholder's written refusal of the policies or endorsements specified in subsection (1)."  *Id.* § 627.7011(2).  The phrase "policies or endorsements" in subsection (2) refers back to the phrase "policy or endorsement" found at the beginning of subsections (1)(a) and (1)(b).  This is because "related statutory provisions must be read together to achieve a consistent

10

whole." *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 898 (Fla. 2002).

Subsection (2) thus functions as a gap-filling measure. If a policyholder receives the two "policies or endorsements" specified in subsection (1) and does not reject them in writing on an approved form, the policy is deemed to include 25% BOL coverage adjusted according to replacement cost. In this way, a policyholder who simply signs an insurance contract without reading the fine print and explicitly rejecting replacement cost coverage or BOL coverage would still acquire a sufficient, minimum level of protection.

The Allens would agree with our analysis until this point. They would not dispute that a policyholder is entitled to 25% BOL coverage when she signs a homeowner insurance policy and does not explicitly reject such coverage. However, the Allens contend that when a policyholder selects BOL coverage above 25% percent, that selection must be made on a form approved by the Regulation Office.

The Allens' entire argument hinges on a single sentence in subsection (2): "The rejection or selection of alternative coverage shall be made on a form approved by the [Regulation] [O]ffice." Fla. Stat. § 627.7011(2). Since this sentence follows the phrase "25 percent of the dwelling limit," the Allens argue the term "alternative coverage" refers to any departure—up or down—from 25%.

11

Considered in isolation, the Allens' interpretation of this sentence is persuasive. The ordinary meaning of the word "alternative" is "a proposition or situation offering a choice between two things wherein if one thing is chosen the other is rejected." WEBSTER'S NEW INTERNATIONAL DICTIONARY 63 (3d ed. 1976). The word "alternative" is therefore not limited to a downward departure. If a policyholder selects 50% BOL coverage, she has chosen that amount and rejected the 25% BOL coverage.

The Allens buttress this argument by noting the sentence refers to the selection, not just the rejection, of alternative coverage. If the approved form requirement applied only when a policyholder sought to reject at least 25% BOL coverage, there would be no reason to include the word "selection," which necessarily refers to BOL coverage exceeding 25%. *See State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002) ("[T]he Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.").

The Allens' argument is severely undermined, however, when this single sentence in subsection (2) is considered within the entire context of § 627.7011. "Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992).

Analysis of the whole statute establishes the approved form requirement applies only when a policyholder seeks to choose less than 25% BOL coverage.

Although subsection (2) requires the written rejection or selection of alternative coverage on an approved form, Fla. Stat. § 627.7011(2), subsection (1) contains no such requirement and simply provides a BOL policy "may be limited to 25 percent or 50 percent of the dwelling limit, as selected by the policyholder," *id.* § 627.7011(1). From this discrepancy, one can infer that when a policyholder chooses 50% coverage, or any other level of coverage above 25%, writing on an approved form is not required. Had the Legislature intended to require a policyholder's written consent on an approved form to select BOL coverage above 25%, it presumably would have written subsection (2)'s requirement into subsection (1). "Where the legislature has included a specific provision in one part of a statute and omitted it in another part, we must conclude that it knows how to say what it means, and its failure to do so is intentional." *Paragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., Inc.*, 859 So. 2d 1233, 1235 (Fla. 4th DCA 2003).

Furthermore, contrary to the Allens' argument, the inclusion of the word "selection" in subsection (2) is not superfluous merely because a policyholder's selection of BOL coverage over 25% is not subject to the approved form requirement, Fla. Stat. § 627.7011(2). A policyholder could select 1%, 10%, or

20% BOL coverage.  These percentages are lower than the 25% default coverage

level, but would still have to be "selected" on an approved form.

Our interpretation is bolstered by another sentence—directly following the

approved form requirement in subsection (2)—which states: "The form must fully

advise the applicant of the nature of the coverage being rejected."  *Id.*  If an

applicant selected coverage above 25%, she would not, by definition, be

"rejecting" any coverage about which she could be advised.  Rather, she would be

gaining coverage above 25%.  If the approved form requirement applied when an

applicant selected coverage above 25%, the advisement requirement would be

superfluous.  "Statutory interpretations that render statutory provisions superfluous

are, and should be, disfavored."  *Johnson v. Feder*, 485 So. 2d 409, 411 (Fla. 1986)

(quotation omitted).  If the Legislature were truly concerned about excessive

insurance, it would not have limited the advisement requirement to situations in

which the applicant rejected BOL coverage.  Rather, the Legislature would have

required applicants to be advised of the risks associated with excessive BOL

coverage.  Where another, plausible reading of the statute that does not render any

language surplusage is available, a court "does not assume such clumsy

draftsmanship."  *Dewsnup v. Timm*, 502 U.S. 410, 425, 112 S. Ct. 773, 782 (1992).

The statutory purpose of § 627.7011 is consistent with the interpretation that

subsection (2)'s approved form requirement does not apply to BOL coverage

exceeding 25%.  Under Florida law, "to the extent that there is any ambiguity as to the intent of [a statutory provision], we are guided by the stated statutory purpose." *Woodham*, 829 So. 2d at 897.  The statutory purpose of § 627.7011(2) is evident in subsection (4).  The Legislature intended to "encourage policyholders to purchase sufficient coverage to protect them in case events excluded from the standard homeowners policy, such as law and ordinance enforcement . . . , combine with covered events to produce damage or loss to the insured property."  Fla. Stat. § 627.7011(4).  The Legislature undoubtedly sought to protect homeowners from insufficient insurance coverage.

The Allens, though, contend the final sentence of subsection (4) shows the Legislature was equally concerned with the financial burden of excessive insurance.  The sentence says, "The intent is also to encourage policyholders to discuss these issues [of BOL coverage] with their insurance agent."  *Id.*  This sentence does not evince the Legislature's concern about policyholders acquiring too much insurance.  Read in conjunction with the prior sentence's discussion of "sufficient coverage," *id.*, this language signals the Legislature's intent to have insurance agents warn policyholders about the dangers of underinsuring one's home.  The overriding concern of § 627.7011 is to decrease the prevalence of underinsurance, not excessive insurance.  Accordingly, subsection (2)'s approved form requirement does not apply when a policyholder selects BOL coverage

15

greater than 25% of the dwelling limit.

2. *Legislative history*

When, as here, the words of the Legislature are clear, "the legislative history of a statute is irrelevant." *First Healthcare Corp. v. Hamilton*, 740 So. 2d 1189, 1196 (Fla. 4th DCA 1999), *disapproved on other grounds by Fla. Convalescent Ctrs. v. Somberg*, 840 So. 2d 998 (Fla. 2003). We nonetheless note the legislative history of § 627.7011 is consistent with our plain reading of the Legislature's intended meaning.

The Legislature originally enacted § 627.7011 in 1993. Act of Nov. 10, 1993, ch. 93-410, § 17, 1994 Fla. Laws 37–38 (codified at Fla. Stat. § 627.7011). The Legislature passed the statute in response to the widespread property insurance availability crisis caused by Hurricane Andrew. STAFF OF S. COMM. ON INS., STAFF ANALYSIS AND ECONOMIC IMPACT STATEMENT, SB 16C, 13th Leg., Spec. Sess. C, at 1–3 (Fla. 1993).[5] After the hurricane, the Legislature learned many policyholders were unaware they could have obtained coverage for replacement cost and BOL coverage. STAFF OF H.R. COMM. ON INS., FINAL BILL ANALYSIS & ECONOMIC IMPACT STATEMENT, HBs 33-C & 43-3, 13th Leg. Spec. Sess. C, at 3 (Fla. 1993). The problem of insufficient BOL coverage was most pronounced for

---

[5] "[W]hile not determinative of final legislative intent," legislative staff analyses are "one touchstone of the collective legislative will." *GTC, Inc. v. Edgar*, 967 So. 2d 781, 789 (Fla. 2007).

policyholders who were required by the Federal Emergency Management Administration to raise the floor level of their homes by several feet, a renovation that typically cost $10,000 to $30,000. *Id.*

The Legislature created the Study Commission on Property Insurance and Reinsurance, which met during the summer of 1993 and recommended the contract reforms codified in § 627.7011. *Id.* The Commission recommended the Legislature "mandat[e] offer of replacement cost coverage up to policy limits" and "mandat[e] offer of law and ordinance coverage with limits of 25 percent of dwelling limits." *Id.* The Legislature did precisely that by enacting § 627.7011. Nothing in the legislative history suggests the Legislature passed § 627.7011(2) to protect homeowners from having too much insurance. The Legislature instead sought to ward off the financial calamity many Floridians experienced when Hurricane Andrew destroyed their homes and they lacked the funds to rebuild in accordance with federal law and modern building codes.

Both the plain language of § 627.7011(2) and its legislative history demonstrate a homeowner need not give written consent on an approved Regulation Office form to acquire BOL coverage above 25%. Since USAA did not violate § 627.7011(2), the district court did not err in dismissing the complaint. The Allens failed to allege a violation of § 627.7011(2), and USAA therefore did

not breach the contract because the Allens paid for and received the 50% BOL

coverage in the policy.

B. *Florida Statutes § 627.418(1)*

Alternatively, even if USAA had violated § 627.7011(2), the district court

did not err in dismissing the complaint.  Florida Statutes § 627.418(1) mandates

dismissal because a policy whose limits exceed Florida insurance coverage

limitations must be enforced as written.

Again, under Florida law we examine the statute's plain language.  *See*

*Atwater*, 95 So. 3d at 90.  Section 627.418(1) states,

> Any insurance policy, rider, or endorsement otherwise valid
> which contains any condition or provision not in compliance with the
> requirements of this code shall not be thereby rendered invalid, except
> as provided in s. 627.415,[6] but shall be construed and applied in
> accordance with such conditions and provisions as would have
> applied had such policy, rider, or endorsement been in full compliance
> with this code.  In the event an insurer issues or delivers any policy
> for an amount which exceeds any limitations otherwise provided in
> this code, such insurer shall be liable to the insured or his or her
> beneficiary for the full amount stated in the policy in addition to any
> other penalties that may be imposed under this code.

The only plausible reading of § 627.418(1) is that where a policy provides

coverage beyond any limitation in the code, the court must enforce the terms of the

contract as written unless the code expressly authorizes other penalties.

---

[6] Florida Statutes § 627.415 is inapplicable here.  That section prohibits insurers from
issuing policies "purporting to make any portion of the charter, bylaws, or other constituent
document of the insurer . . . a part of the contract unless such portion is set forth in full in the
policy."  Fla. Stat. § 627.415.

18

The first sentence of § 627.418(1) governs situations where an insurer issues a policy providing less than the minimum coverage required by law.  In such circumstances, the policy must be enforced as if the insurer were liable for the minimum coverage amount.  *See Auto-Owners Ins. Co. v. DeJohn,* 640 So. 2d 158, 161 (Fla. 5th DCA 1994) ("When an insurance policy does not conform to the requirements of statutory law, a court must write a provision into the policy to comply with the law, or construe the policy as providing the coverage required by law.").

By contrast, the second sentence of § 627.418(1) governs the opposite situation, where a policy provides more than the maximum coverage allowed by law.  When that occurs, a policyholder can only enforce the contract as written or recover "other penalties that may be imposed under this code."  Fla. Stat. § 627.418(1).  The Allens have not pointed to "any other penalties that may be imposed under this code."  *Id.*  As such, the plain language of § 627.418(1) bars the Allens' attempt to recover premium payments.

Nonetheless, the Allens argue the second sentence of § 627.418(1) is irrelevant to their claim for relief.  They assert the statute applies only when the policyholder alleges a property loss for which the insurer is "liable."  *Id.*  In other words, where an insurer provides coverage above the amount allowed by law, the insured can both recover her premium payments *and*, in the event of a property

19

loss, force the insurer to pay the full coverage amount.  The policyholder can have her cake and eat it, too.

The plain language of the statute does not support the Allens' interpretation for two reasons.  First, the statute's words do not distinguish between premium recovery and property loss.  The Allens claim the word "liable" in the second sentence refers only to property loss, but the word "liable" is not defined in the statute.  In the absence of a statutory definition, "words are construed in their plain and ordinary sense."  *Jones v. Williams Pawn & Gun, Inc*., 800 So. 2d 267, 270 (Fla. 4th DCA 2001).  The ordinary meaning of "liable" is broad enough to include both premium recovery and property loss.  *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1302 (3d ed. 1976) (defining "liable" as "bound or obligated according to law or equity").  The Allens' narrow interpretation therefore finds no support in the statutory text.

Additionally, the Allens' interpretation would yield bizarre, inconsistent results.  According to the Allens, a noncompliant insurance policy must be construed as if "in full compliance with this code," yet at the same time also be construed "for the full amount stated in the policy."  Fla. Stat. § 627.418(1).  A court cannot simultaneously construe an insurance policy as fully in compliance with governing law while also giving effect to terms not fully in compliance.  We resist attributing to the Legislature an intention that "would render the statute

internally inconsistent." *Mancuso v. State*, 636 So. 2d 753, 755 (Fla. 4th DCA 1994). The district court did not err in dismissing the complaint because § 627.418(1) mandates enforcement of the Allens' policies as written.

## IV. CONCLUSION

The Allens claim they received no value from their BOL insurance because their home never suffered a covered loss, and they now wish to recoup their premiums. Florida law does not countenance that result. The Allens freely contracted to buy 50% coverage, and that is precisely what they received. They cannot now, with the benefit of hindsight, undo their decision to protect their home from unrealized risk. The value of insurance lies in the "[t]he transfer of risk from insured to insurer . . . and that transfer is complete at the time that the contract is entered." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 130, 102 S. Ct. 3002, 3009 (1982). We affirm the district court's dismissal of the complaint.

**AFFIRMED.**

# APPENDIX

627.7011.  Homeowners' policies; offer of replacement cost coverage and law and ordinance coverage

(1) Prior to issuing a homeowner's insurance policy, the insurer must offer each of the following:

(a) A policy or endorsement providing that any loss that is repaired or replaced will be adjusted on the basis of replacement costs to the dwelling not exceeding policy limits, rather than actual cash value, but not including costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris.

(b) A policy or endorsement providing that, subject to other policy provisions, any loss that is repaired or replaced at any location will be adjusted on the basis of replacement costs to the dwelling not exceeding policy limits, rather than actual cash value, and also including costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris. However, additional costs necessary to meet applicable laws and ordinances may be limited to 25 percent or 50 percent of the dwelling limit, as selected by the policyholder, and such coverage applies only to repairs of the damaged portion of the structure unless the total damage to the structure exceeds 50 percent of the replacement cost of the structure.

An insurer is not required to make the offers required by this subsection with respect to the issuance or renewal of a homeowner's policy that contains the provisions specified in paragraph (b) for law and ordinance coverage limited to 25 percent of the dwelling limit, except that the insurer must offer the law and ordinance coverage limited to 50 percent of the dwelling limit.  This subsection does not prohibit the offer of a guaranteed replacement cost policy.

(2) Unless the insurer obtains the policyholder's written refusal of the policies or endorsements specified in subsection (1), any policy covering the dwelling is deemed to include the law and ordinance coverage limited to 25 percent of the dwelling limit.  The rejection or selection of alternative coverage shall be made on a form approved by the office.  The form must fully advise the applicant of the nature of the coverage being rejected.  If this form is signed by a named insured, it

22

is conclusively presumed that there was an informed, knowing rejection of the coverage or election of the alternative coverage on behalf of all insureds.  Unless the policyholder requests in writing the coverage specified in this section, it need not be provided in or supplemental to any other policy that renews, insures, extends, changes, supersedes, or replaces an existing policy if the policyholder has rejected the coverage specified in this section or has selected alternative coverage. The insurer must provide the policyholder with notice of the availability of such coverage in a form approved by the office at least once every 3 years.  The failure to provide such notice constitutes a violation of this code, but does not affect the coverage provided under the policy.

        . . . .

(4) A homeowner's insurance policy must include in bold type no smaller than 18 points the following statement:

"LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT."

The intent of this subsection is to encourage policyholders to purchase sufficient coverage to protect them in case events excluded from the standard homeowners policy, such as law and ordinance enforcement and flood, combine with covered events to produce damage or loss to the insured property. The intent is also to encourage policyholders to discuss these issues with their insurance agent.

        . . . .